**Fred L. GARDNER, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. A14–81–223–CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

April 15, 1982.

Will Gray, Simonton, for appellant.

John B. Holmes, Jr., Dist. Atty., Houston, for appellee.

Before J. CURTISS BROWN, C. J., and JUNELL and JAMES, JJ.

J. CURTISS BROWN, Chief Justice.

This is an appeal from a conviction of theft of over $10,000. The questions presented are (1) whether the court's charge allowed the jury to convict appellant on a theory not charged in the indictment, (2) whether the trial court erred in ordering appellant to serve thirty days in the Harris County Jail as a condition of probation, and (3) whether the trial court erred in requiring appellant to make restitution to an entity which has been discharged in bankruptcy as a condition of probation. Finding no reversible error, we affirm the conviction.

Memorial Trust (the Trust) was an investment entity established for the purpose of buying an apartment complex and converting it into condominiums. Fred L. Gardner (Gardner or appellant) had apparently been instrumental in several successful ventures of this type with some of the same investors involved here. Shares in the Trust were to be sold, and Gardner, an attorney, was to manage the venture.

Gardner represented to the investors that 30 shares would be sold. The conversion was to proceed one building at a time. Each investor was to pay $375.00 per month until the first building of apartments had been converted and sold. At this point the cash flow from the sales of converted units and rent from the others was to be sufficient to proceed through the remaining conversions without further contribution. When all units had been converted and sold, an estimated net profit of approximately two million dollars was to be divided among the investors with each share representing 1/30th of the profit. Gardner, as manager of the venture, was given broad powers by the Trust agreement concerning the purchase of the property, the sale of the property, and the management and maintenance of the property during the time the Trust was to be the owner. As compensation, Gardner was entitled to 5% of the monthly rentals and 10% of the net profit at the conclusion of the venture. He agreed to pay all of his personal expenses from his commissions and fees.

Most of the investors entered the project in the last half of 1976 and began paying the monthly assessments. Some initial or special assessments were also paid by several investors. Although a number of investors had contact with Gardner from time to time, and although the project was moving slower than expected, the investors first realized there was a problem with the Trust in February of 1978. It was at this time that National Home Acceptance Corporation (N.H.A.C.), the holder of the purchase money mortgage, sent a foreclosure notice. This prompted a number of meetings between the investors and Gardner. It was then the investors learned that only 18 to 20 shares were actually sold and that the Trust was in financial difficulties. When questioned about approximately $130,000 which was unaccounted for, Gardner admitted he had been using Trust money for his house payment, office and rent expense, car payment, telephone expense and insurance. He said he was forced to do this because he

had not worked for about a year. He also admitted he had no authority under the agreement to pay his personal expenses directly from Trust funds.

It was also discovered that a $20,000 check was written on the Trust account apparently to secure a cashier's check payable to the Internal Revenue Service. An accountant employed by the Trust testified that there was no such tax liability owing from the entity, which was a partnership for tax purposes. Gardner, however, had a sizable personal tax liability at the time according to his personal accountant. At one point Gardner contacted an investor and requested he cosign an irrevocable letter of credit for $150,000. He represented the letter of credit would only be used for purposes of security and would not be drawn on. In May of 1978, N.H.A.C. drew on the letter of credit, and the investor had to repay the $150,000 plus interest. In a deposition Gardner also admitted he had never apprised the investors of the actual purchase price of the property.

Gardner was removed as trustee on February 11, 1978. Several of the investors then took over the management of the Trust until it went into bankruptcy in April or May of 1979.

Appellant was indicted in separate paragraphs for misapplication of fiduciary funds and for theft of over $10,000. Upon a plea of "not guilty" he was tried by a jury and convicted under the theft paragraph. The jury assessed punishment at ten years confinement in the Texas Department of Corrections and a fine of $10,000, further recommending the term of imprisonment be probated. As conditions of probation, appellant was required to make restitution of $133,272 to the Trust and submit to confinement in the Harris County Jail for a period of 30 days. Appellant perfected appeal to this Court.

Appellant brings four grounds of error. In the first two grounds of error his basic contention is that the charge permitted the jury to convict him on a theory not alleged in the indictment. Specifically, he complains first of the charge containing the definition of "deception." He asserts there

was no evidence showing deception in the appropriation of the Trust funds. Secondly, he asserts that even if the evidence raised the issue of deception and the definition was properly placed in the charge, any deception did not affect the judgment of others in the transaction. Finally, he complains that under the charge he could be convicted of theft if he appropriated the money through deception on the individual investors as opposed to the complainant, the Trust. In his third and fourth grounds of error appellant complains of the trial court ordering, as conditions of probation, that he submit to confinement in the Harris County Jail for thirty (30) days and that he make restitution to the bankrupt Trust.

The second count of the indictment charged that appellant did

... unlawfully, appropriate property, namely money, of the value of over ten thousand dollars without the effective consent of Memorial Trust, the owner thereof with the intent to deprive the owner of the property.

The offense of theft is set forth in Tex.Penal Code Ann. § 31.03 (Vernon Supp. 1982), as follows:

(a) A person commits an offense if he unlawfully appropriates property with intent to deprive the owner of the property.

(b) Appropriation of property is unlawful if:

(1) it is without the owner's effective consent; ....

Tex.Penal Code Ann. § 31.01 (Vernon 1974), provides the following definitions:

(4) 'Effective consent' includes consent by a person legally authorized to act for the owner. Consent is not effective if:

(A) induced by deception or coercion; ....

(2) 'Deception' means:

(A) creating or confirming by words or conduct a false impression of law or fact that is likely to affect the judgment of another in the transaction, and that the actor does not believe to be true;

(B) failing to correct a false impression of law or fact that is likely to affect

the judgment of another in the transaction, that the actor previously created or confirmed by words or conduct, and that the actor does not now believe to be true; ....

The court's charge to the jury followed the statutory language quoted above.

◼ Under appellant's first two grounds of error he contends there was no evidence of deception. We are of the opinion that the record contains ample evidence of deception to justify the inclusion of the definition in the charge. Appellant misrepresented the number of shares sold including listing a number of fictitious investors on some reports and statements. He also induced one investor to sign a letter of credit upon the misrepresentation that it would not be drawn upon. This evidence shows words or conduct which could create or confirm a false impression. In addition, no attempt was made by appellant to apprise the investors of either the fact that he was using Trust funds for his personal expenses in violation of the agreement or the actual financial condition of the Trust. This evidence indicates a failure to correct a false impression of fact. Therefore, we hold it was proper for the trial court to instruct the jury on "deception."

◼ Appellant also contends that any deception concerned the individual investors as opposed to the complainant, the Trust. The investors, including Gardner, who was contributing time and expertise as opposed to capital, comprised the Trust. The group as a whole had the authority to place in an individual the powers of management. As soon as it was learned that Gardner had not discharged the duties associated with the management of the Trust in an acceptable manner, he was removed from the position. In other words, it was the various deceptions perpetrated on the investors which allowed appellant to remain in the position as manager of the venture for as long as he did. It was only from this position that he could have appropriated the funds of the Trust for his own use. But for the deceptions, the investors would have known the true state of affairs at an earlier date and may have been able to salvage the project or at least minimize their losses through new management. We are not prepared to hold that in a small investment entity such as we have before us, deception of the individual investors who have the direct control over management is different from deception of the entity itself.

◼ Appellant finally contends that any deception occurred after all or most of the contributions were made to the Trust and, thus, could not have affected the judgment of any parties to the transaction. We distinguish our situation from that in *Cortez v. State*, 582 S.W.2d 119 (Tex.Cr.App.1979), relied on by appellant. The fact situation there concerned a simple transaction involving a sale of services. The court held the conduct of the defendant in issuing a bad check could not have affected the judgment of the complainant in the delivery of the services allegedly stolen. The situation at issue here concerns a relationship which was to extend until the Trust was terminated. This would hopefully occur upon the successful completion of the venture. We hold the "transaction" in this case was continuing in nature and included all interactions between the investors and Gardner related to the joint business venture. Thus, the acts of deception could have affected the judgment of the investors.

Having considered appellant's specific contentions, we conclude and hold that the court's charge did not authorize conviction on a theory which was not alleged in the indictment. Appellant's first and second grounds of error are overruled.

◼ Appellant's third ground of error complains of the action of the trial court that imposed a 30 day sentence in the Harris County Jail as a condition of probation. Probation of appellant's sentence of confinement in the Texas Department of Corrections was recommended by the jury and granted pursuant to Tex.Code Crim.Pro. Ann. art. 42.12, § 3a (Vernon 1979). This section provides, "the court may impose only those conditions which are set forth in Section 6 hereof." The condition complained of is found in Section 6b which, along with Section 6a, was part of an amendment to the article which became effective on August 28, 1967.

Appellant's argument is essentially that Section 6b was not intended to be a part of Section 6 as used in the portion of the statute quoted above. If we accept this argument we see no circumstances in which sections 6a and 6b could be invoked. In *Gleffe v. State*, 501 S.W.2d 672 (Tex.Cr. App.1973), the Court of Criminal Appeals stated:

> Section 6a, ... was a part of an Amendment to Article 42.12, Vernon's Ann.C.C.P., contained in S.B. 145, 60th Legislature, Chapter 659, effective August 28, 1967. It amended Sec. 6 of Article 42.12 and thereby became a part of Section 6, ...

We hold that Section 6b also became a part of Section 6 as defining allowable conditions of probation that may be ordered by a district judge. Appellant's third ground of error is overruled.

■ Finally, appellant complains of being required to make restitution to the Trust which has been discharged in bankruptcy. We find no merit in this ground of error. It may be possible for a trustee in bankruptcy, a creditor or other party to establish a right to the money in other proceedings. However, this does not provide appellant a basis for an attack against a condition of probation ordering him to make restitution to the entity from which it was taken. The condition of restitution was within the power of the trial judge to order, and the amount was supported by the evidence. Appellant's fourth ground of error is overruled and the conviction is affirmed.